UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   Xtra Petroleum Transport, Inc.,                                    Case No. 11-12639-j11

             Debtor.

Xtra Petroleum Transport, Inc.,

             Plaintiff,

             v.                                                                                    Adversary No. 12-1155-j

Brad Hall & Associates, Inc.,

             Defendant.

# MEMORANDUM OPINION

This matter came before the Court on the Plaintiff's and Defendant's "Stipulation of Facts and Request for Judgment". Docket No. 23, the "Stipulation." The parties requested the Court to rule on the Plaintiff's Complaint (Docket No. 1), the Defendant's Answer (Docket No. 12), and the Plaintiff's Motion to Enforce the Automatic Stay or for Preliminary Injunction Against the Defendant (Docket No. 7). On April 23, 2012, the parties submitted simultaneous briefs. The Court is asked to consider the following: (1) whether the automatic stay under 11 U.S.C. § 362 prevents Brad Hall and Associates, Inc. ("BH&A", "Defendant", or "Defendant-Creditor") from selling 100% of the capital stock in the Debtor, Xtra Petroleum Transport, Inc. ("Xtra", "Xtra Petroleum", or "Plaintiff", or "Plaintiff-Debtor"); and (2) if the automatic stay does not apply, whether the Court should enter a preliminary injunction that prevents BH&A from selling the stock at auction.

**Jurisdiction and Venue**

This is an adversary proceeding filed pursuant to Fed.R.Bankr.P. 7001(7). The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b). The parties stipulated that the adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(G),(N), and (O).

**Procedural History**

The Stipulation essentially consists of the parties' joint request that the Court consider all testimony and exhibits presented during two days of trial held on February 28 and March 6, 2012, and that the Court take judicial notice of the case files for Case No. 11-12639-j11 and Adversary Proceeding Nos. 11-1221-j11 and 12-1155-j11. The trial addressed: (i) the Plaintiff-Debtor's objection to the Defendant-Creditor's claim in the underlying bankruptcy case (No. 11-12639-j11) and (ii) the Plaintiff's claims to avoid alleged preferential and fraudulent transfers under 11 U.S.C. §§ 547 and 548 (Adversary No. 11-1221-j11). In between the two trial dates, the Plaintiff-Debtor filed *this* adversary proceeding. Following the trial in Adversary Proceeding No. 11-1221-j11, the Plaintiff and Defendant in this adversary proceeding (who were also the Plaintiff and Defendant in Adversary No. 11-1221-j11), reached a partial settlement. Under the partial settlement, the Plaintiff withdrew its objection to the timeliness of the Defendant's filing of a proof of claim in the underlying bankruptcy case, and the Defendant agreed to the issuance of a temporary restraining order in this adversary proceeding to stop a scheduled sale of the stock. On April 11, 2012, the Court entered a memorandum opinion resolving the issues in the adversary proceeding related to the fraudulent and preferential transfer claims. *See* Adversary No. 11-1221, Docket No. 18.

For reasons explained below, the Court concludes that the automatic stay does not prevent the Defendant from selling the stock, and denies the Plaintiff's request for a preliminary injunction on the ground that the request for a preliminary injunction is rendered moot by the Court's final decision regarding the scope of the automatic stay. The Court now enters the following findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

**FACTS**

Kathy Parseghian ("Kathy" or "Ms. Parseghian") is the President of Xtra Petroleum and owns 100% of its capital stock (sometimes called the "Stock"). BH&A, a fuel supplier, has been involved in contentious on-and-off-again litigation with Kathy's husband, Sarkis Parseghian ("Sarkis" or "Mr. Parseghian"), and at least one other party who is not Kathy or Xtra, since 2004. In 2004, BH&A obtained a default judgment in Idaho against Sarkis and one of Sarkis's business interests, Savoy Truck Stop, a partnership, in the approximate amount of $718,313.68. *See* Plaintiff's Exhibit 2.[1] That judgment went largely unpaid.

In 2008, after learning that Kathy was operating Xtra in New Mexico and receiving substantial assistance from Sarkis, BH&A domesticated the default judgment in New Mexico. In February 2008, BH&A filed a complaint in the Second Judicial District Court for the State of New Mexico (the "state court action"), alleging alter ego and fraudulent transfer claims against Xtra, Kathy, and Sarkis. *See* Plaintiff's Exhibit 3. After several orders on motions for summary judgment, BH&A's only remaining claim in the state court action was the alter ego claim, and the remaining defendants were Xtra and Sarkis. *See* Plaintiff's Exhibits 5 and 6. Kathy was dismissed from the case. In the state court action, the parties completed discovery and other pretrial procedures, and a substantial pretrial order was entered on August 18, 2009.

---

[1] All references to exhibits are references to exhibits admitted during the trial in Adversary Proceeding No. 11-1221-j11 and the contested matter in the underlying bankruptcy case.

*See* Defendant's Exhibit I. In September 2009, on the eve of trial, a settlement was reached of the remaining claims in the state court action. *See* Defendant's Exhibit A.

The Settlement Agreement among BH&A, Xtra, and Sarkis (the "Settlement Agreement") provided that Xtra would execute the following: (i) a deed of trust against Xtra's real property, and (ii) a security agreement listing all of the stock of Xtra. Both the deed of trust and the security agreement were to be executed to grant liens to BH&A to secure a promissory note, payable to BH&A, to be executed by Xtra and Sarkis in the settlement amount. The Settlement Agreement also provides that the Stock would be held in escrow pending payment in full of the promissory note. The Settlement Agreement further provides that upon payment of the promissory note in full, the Stock would be returned to Kathy Parseghian and the deed of trust would be released and satisfied. *See Id.*

Although the Settlement Agreement so contemplated, no such deed of trust or security agreement was ever executed. Further, there is no evidence before the Court that any promissory note for the amount of the settlement, or any other amount, was ever executed. Moreover, although the Settlement Agreement provided that Xtra would execute a security agreement listing the Stock of Xtra as collateral for payment by Xtra and Sarkis under the promissory note, *Xtra did not own its stock*. Kathy Parseghian owned 100% of the Stock of Xtra. The Settlement Agreement does not name Kathy Parseghian as a party thereto. She executed the Settlement Agreement only as President of and on behalf of Xtra, but nevertheless delivered her Xtra Stock to an escrow agent. The Court has not been provided with any escrow instructions.

BH&A now seeks to enforce a lien against the Stock by selling the Stock at auction. On February 8, 2012, BH&A published and served a "Notice of Auction Sale of Common

Stock." BH&A scheduled the auction for March 12, 2012 at the Bernalillo County Courthouse. *See* Docket No. 1, Exhibit A, the "Notice." BH&A reserved the right to credit bid the amount of its claim, which the Notice described as being for the sum of $558,101.76, plus various costs, fees, and taxes in the amount of $18,460.39. There is no evidence before the Court that BH&A scheduled the sale of the Stock pursuant to a court order or judgment. Therefore, the Court infers that the scheduled sale was a non-judicial sale.

The Plaintiff-Debtor seeks to stop the sale. After the parties' partial settlement of Adversary Proceeding No. 11-1221was stated on the record on March 6, 2012, a stipulated order was entered. The order enjoined the Stock auction "until after the Court has issued a ruling on the Debtor's Motion for Preliminary Injunction." *See* Docket No. 9. This ruling resolves that motion.

**DISCUSSION**

Plaintiff's Complaint, Motion to Enforce the Automatic Stay, and supporting Brief ("Plaintiff's Brief") request the Court to determine that the automatic stay under subsections (a)(1), (a)(3), and (a)(4) of 11 U.S.C. § 362 prevents BH&A from selling the Stock. Xtra thereby asserts that BH&A's sale of the Stock, without BH&A first obtaining relief from the automatic stay to collect the amount owing it under the Settlement Agreement, would be (i) an act to obtain property of the estate or to exercise control over property of the estate in violation of § 362(a)(3); (ii) an act to enforce a lien against property of the estate in violation of § 362(a)(4); and (iii) an act to attempt to collect or recover on a prepetition claim against Xtra in violation of § 362(a)(1). The Court disagrees.

### 1. Sale of the Stock Does Not Violate 11 U.S.C. § 362(a)(3) or (a)(4).

Sections 362 (a)(3) and (a)(4) of the Bankruptcy Code apply only to acts affecting property of the estate. By the Plaintiff's own admission, the Stock is not property of the estate.[2] Kathy Parseghian, not Xtra, owns the Stock. Because the Stock is not property of the estate, any act on the part of BH&A to sell the Stock would not violate 11 U.S.C § 362(a)(3) or (a)(4).

### 2. Sale of the Stock Does Not Violate 11 U.S.C. § 362(a)(1)

Xtra argues that, although Kathy Parseghian is not a debtor in a bankruptcy case and the Stock is thus not property of the estate, BH&A's efforts to enforce its lien against the Stock constitute acts to collect its claim against the Debtor, Xtra, in violation of 11 U.S.C. § 362(a)(1). Xtra further argues that an "unusual circumstances" exception to the general rule that the automatic stay only applies to debtors applies here. The Court will address both arguments.

<u>BH&A's acts to enforce a lien against the Stock are
not acts to recover a claim against Xtra</u>

Section 362(a)(1) of the Bankruptcy Code provides, in relevant part:

> (a) … a petition filed under section 301, 302, or 303 of this title … operates as a stay, applicable to all entities, of—
> (1) … [an act] to recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(a)(1).

Xtra relies on *In re Colonial Realty,* 980 F.2d 125 (2nd Cir. 1992). In *Colonial Realty*, the Second Circuit found that the automatic stay prevented the FDIC from pursuing a fraudulent transfer action against a third party to collect a debt owing by the debtor in

---

[2] *See* Docket 1, ¶38 and Docket 7, ¶ 38 (both state: "The stock sale is not an action to obtain property of the estate…."); Docket 25, p. 2 ("The stock itself is the property of Kathy Parseghian, not the Debtor.").

-6-

bankruptcy to the FDIC.  The fraudulent transfer action that the FDIC sought to pursue arose under a federal statute other than the Bankruptcy Code.  The third party allegedly had received a fraudulent transfer from the debtor against whom the FDIC had significant claims.  The debtor also had a fraudulent transfer claim against the third party under the Bankruptcy Code.  The Second Circuit concluded that the FDIC's actions ran afoul of the 11 U.S.C. § 362(a)(1) proscription of acts "to recover a claim against the debtor" because "[a]bsent a claim against the debtor, there is no independent basis for the [FDIC's] action against the [third party].  Moreover, the creditor can only recover property or value thereof received from the debtor sufficient to satisfy the creditor's claim against the debtor."  *In re Colonial Realty,* 980 F.2d at 132, *citing In re Saunders*, 101 B.R. 303, 304-06 (Bankr.N.D.Fla.1989).

Here, because Kathy Parseghian herself has no personal liability to BH&A, enforcement of any lien against the Stock could not be characterized as an attempt to collect a debt owing by Kathy rather than Xtra.  However, unlike the FDIC in *Colonial Realty*, BH&A does have a basis to enforce its claimed lien against the Stock that is independent of its effort to collect its claim against Xtra.  The Settlement Agreement provides for a pledge of the Stock not only as collateral for a debt of Xtra to BH&A but also as collateral for a debt of Sarkis to BH&A.  Thus, BH&A is seeking to enforce its claimed lien against the Stock to collect a debt of Sarkis independently of its claim against Xtra.  Under the principles explicated in *Colonial Realty,* BH&A's acts to enforce its claimed lien do not violate 11 U.S.C. § 362(a)(1).  The Court also notes that, unlike in *Colonial Realty*, any effort by BH&A to enforce a lien against the Stock will not potentially diminish the assets of the Xtra bankruptcy estate.

## The automatic stay does not encompass BH&A's acts to enforce a lien against the Stock due to "unusual circumstances"

Alternatively, the Plaintiff contends that the automatic stay applies to the sale of the Stock under an "unusual circumstances" exception to the general rule that the automatic stay does not apply to non-debtors in chapter 11 cases.[3] The Court disagrees.

The Tenth Circuit recognized a narrow exception to the general rule that the scope of the automatic stay does not extend to actions against non-debtors, explaining:

> A narrow exception allows a stay to be imposed under section 362(a)(1) against a nonbankrupt party in "unusual situations" as "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."
>
> *Oklahoma Federated Gold and Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141-42 (10th Cir. 1994), *quoting A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986), cert. denied, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

The facts before the Court do not establish such unusual circumstances. There is no evidence that there is such an identity between Xtra and Kathy Parseghian that Xtra may be said to be the real party defendant in relation to BH&A's claim against the Stock owned by Ms. Parseghian, or that BH&A's acts seeking to enforce a lien against the Stock are tantamount to asserting a claim against Xtra or its assets. In fact, the state court dismissed BH&A's claim that Kathy Parseghian is the alter ego of Xtra.

There is also some authority for the proposition that the automatic stay may extend to acts against non-debtor parties "'where stay protection is essential to the debtor's efforts of reorganization.'" *Forcine Concrete & Const. Co., Inc. v. Manning Equipment Sales &*

---

[3] Chapter 11 of Title 11 contains no provision for a codebtor stay, whereas the other reorganization chapters of Title 11 *do* specifically provide for such a stay. *See* 11 U.S.C. §§ 1201, 1301, both of which are titled "Stay of action against codebtor." *See, also, Williford v. Armstrong World Industries*, 715 F.2d at 127 (1983) (the Fourth Circuit takes note of Chapter 11's omission of a statute providing for a codebtor stay and the fact that the Fifth and Sixth Circuits have also found this analysis persuasive).

-8-

*Service*, 426 B.R. 520 (E.D.Pa. 2010)(*quoting McCartney v. Integra Nat. Bank North*, 106 F.3d 506, 510 (3rd Cir. 1997)). However, the Court need not decide whether this can constitute an "unusual circumstance" such that the automatic stay would extend to acts against non-debtor parties because there is no evidence before the Court that Xtra has a realistic prospect of reorganizing in its chapter 11 case. The Court would need such an evidentiary predicate to make the determination that preventing the sale of the Stock is essential to Xtra's efforts to reorganize.

The Court thus finds that 11 U.S.C. § 362(a)(1) does not prevent the sale of the Stock.

### 3. *The Request for a Preliminary Injunction is Moot*

Plaintiff's Complaint contains two counts. Count I requests a declaratory judgment that the automatic stay prevents BH&A from selling the Stock to enforce its claimed lien. Count II requests the issuance of a preliminary injunction to prevent the sale of the Stock. The parties have asked the Court to make a final ruling on the merits of this Complaint. Once the Court makes a decision on the merits, a pending request for preliminary injunction is moot. A *preliminary* injunction is issued to safeguard a party's position *prior* to a final decision on the merits. *See* 11A Wright, Miller & Kane Federal Practice and Procedure Civil 2d §2948.3 ("The very purpose of an injunction under Rule 65(a) is to give temporary relief based on a preliminary estimate of the strength of plaintiff's suit, prior to the resolution at trial of the factual disputes and difficulties presented by the case."). Because the Court has made a decision on the merits, Xtra's request for temporary relief prior to a decision on the merits is moot.[4]

---

[4] Although the Court declines to rule on Xtra's request for a preliminary injunction, it does not appear that Xtra needs injunctive relief to protect it from a non-judicial sale of the Stock. It appears likely a non-judicial sale of the Stock would be ineffective. The Settlement Agreement dictates that it "be interpreted in accordance with the laws of the State of New Mexico." This choice of law provision is enforceable pursuant to N.M.S.A. 1978 § 55-1-301(A). Because Kathy Parseghian, who owns the Stock, was not a party to the Settlement Agreement,

-9-

**CONCLUSION**

Based on the foregoing, the Court holds that the automatic stay imposed under 11 U.S.C. § 362 does not apply to BH&A's proposed auction of the Stock, and that the motion for preliminary injunction is rendered moot by this decision. The Court will enter a separate order consistent with this memorandum opinion.

_____

Honorable Robert H. Jacobvitz

Entered on docket: 5/17/2012

---

BH&A would need to obtain a reformation of the agreement for it to bind Kathy individually. *See, generally, Twin Forks Ranch, Inc. v. Brooks,* 125 N.M. 674, 676-80 (App.1998)(describing requirements to reform a contract). Even if a court were to reform the Settlement Agreement so that it bound Kathy Parseghian individually to the promise to execute a security agreement, the Settlement Agreement is not by itself sufficient to create a security interest in the Stock. No security agreement granting a security interest in the Stock was ever executed. Stating an *intention* to grant a security interest does not create a security interest. A promise to pledge in the future is not itself a pledge. *See, e.g., In re Dayton Suzuki, Inc.*, 27 B.R. 915 (Bankr.Ohio.1983) (court declines to find a security agreement existed when a party had previously pledged that it "will execute" one and then did not do so).